## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BUHRKE FAMILY REVOCABLE TRUST, on Behalf of Itself and All Others Similarly Situated,<br><br>      Plaintiff,<br>  v.<br>U.S. BANCORP, ANDREW CECERE, TERRY DOLAN, and JODI RICHARD,<br><br>      Defendants. | Case No.<br><br>**<u>CLASS ACTION</u>**<br><br>**COMPLAINT FOR VIOLATION OF THE <u>FEDERAL SECURITIES LAWS</u>**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, The Buhrke Family Revocable Trust ("Plaintiff"), on behalf of itself and all others similarly situated, by and through its undersigned counsel, hereby brings this Class Action Complaint for Violation of Federal Securities Law ("Complaint") against U.S. Bancorp ("U.S. Bancorp" or the "Company") and Andrew Cecere ("Cecere"), U.S. Bancorp's Chairman and President and Chief Executive Officer ("CEO"); Terry Dolan ("Dolan"), U.S. Bancorp's Chief Financial Officer ("CFO"); and Jodi Richard ("Richard"), U.S. Bancorp's Vice Chair and Chief Risk Officer (collectively, the "Individual Defendants," and collectively "Defendants"), based upon, *inter alia*, the investigation conducted by counsel, which included a review of U.S. Bancorp's public documents, conference calls, and announcements, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding U.S. Bancorp, analysts' reports and advisories about U.S. Bancorp and other information. Plaintiff's counsel's investigation into the matters alleged herein is ongoing and many relevant facts are known only to, or are exclusively within the custody or control of, U.S. Bancorp and the Individual Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired U.S. Bancorp securities between August 1, 2019 and July 28, 2022, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violation of the federal securities laws under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      U.S. Bancorp ("Company") is a Delaware company headquartered in Minneapolis, Minnesota. U.S. Bancorp provides a full range of financial services, including lending and depository services, cash management, capital markets, and trust and investment management services. It also engages in credit card services, merchant and ATM processing, mortgage banking, insurance, brokerage, and leasing. U.S. Bancorp's banking subsidiary, U.S. Bank National Association ("U.S. Bank"), is engaged in the general banking business, principally in domestic markets. U.S. Bancorp is the publicly traded parent company of U.S. Bank.

3.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (a) U.S. Bank created sales pressure on its employees that led them to open credit cards, lines of credit, and deposit accounts without consumers' knowledge and consent; (b) since at least 2015, U.S. Bank and by extension, U.S. Bancorp, was aware of such unauthorized conduct and that it was violating relevant regulations and laws aimed at protecting its consumers; (c) U.S. Bancorp failed to properly monitor its employees from engaging in such unlawful conduct, detect and stop the misconduct, and identify and remediate harmed consumers; (d) all the foregoing subjected the Company to a foreseeable risk of heightened regulatory scrutiny or investigation; (e) U.S. Bancorp's revenues were in part the product of unlawful conduct and thus unsustainable; and (f) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.      On July 28, 2022, the truth about U.S. Bancorp's practices was disclosed when the Consumer Financial Protection Bureau ("CFPB") issued a Consent Order and fined U.S. Bank $37.5 million for illegally exploiting consumers' personal data to open sham accounts for unsuspecting customers.

5.      On this news, the price of U.S. Bancorp stock declined 4% to close at $46.12 on July 28, 2022.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Section 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

9.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act 15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the alleged misstatements and omissions were made or omitted, and the subsequent damages took place in this Judicial District. Pursuant to U.S. Bancorp's most recent quarterly report (SEC Form 10-Q), as of July 31, 2022, there were 1,485,784, 028 shares of U.S. Bancorp's common stock outstanding. U.S. Bancorp's common stock trades on the New York Stock Exchange ("NYSE"). Accordingly, there are presumably hundreds, if not thousands, of investors in U.S. Bancorp's common stock located within the U.S., some of whom undoubtedly reside in this judicial district.

10.      In connection with the acts alleged in this Complaint, U.S. Bancorp, directly or indirectly, used the instrumentalities of interstate commerce, including interstate wires, U.S. Postal Service mail, wireless spectrum, and the national securities exchange.

## PARTIES

11.     Plaintiff, as set forth in the attached Certification(s) incorporated by reference herein, acquired U.S. Bancorp securities during the Class Period, at artificially inflated prices, and was damaged by the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant U.S. Bancorp is a Delaware publicly traded corporation with its principal place of business at 800 Nicollet Mall, Minneapolis, Minnesota 55402. U.S. Bancorp is the publicly traded parent company of U.S. Bank and its shares trade on the NYSE under the ticker symbol "USB."

13.     Defendant Cecere is the Chairman, President and Chief Executive Officer of U.S. Bank. He has served as President of U.S. Bancorp since January 2016, Chief Executive Officer since April 2017, and Chairman since April 2018.

14.     Defendant Dolan is Vice Chair and Chief Financial Officer of U.S. Bancorp and has held that role since December 2016.

15.     Defendant Richard is a Vice Chair and has held the role of Chief Risk Officer since October 2018.

16.     Defendants Cecere, Dolan, and Richard and are sometimes referred to herein as the "Individual Defendants."  The Individual Defendants, together with U.S. Bancorp, are sometimes referred to herein as the "Defendants."

17.     The Individual Defendants possessed the authority to control the contents of statements made by U.S. Bancorp in its reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.,* the market. The Individual Defendants were provided with copies of U.S. Bancorp's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and

opportunity to prevent their issuance or cause them to be corrected. Due to their positions with U.S. Bancorp, and their access to U.S. Bancorp's material information that was unavailable to the public, the Individual Defendants knew that the adverse facts described herein were not disclosed to and were being concealed from investors. The Individual Defendants are liable for the false statements and omissions alleged herein.

## SUBSTANTIVE ALLEGATIONS

**Background**

18.     Founded in 1863, U.S. Bancorp is a Delaware company headquartered in Minneapolis, Minnesota. U.S. Bancorp offers a full range of financial services, credit card services, merchant and ATM processing, mortgage banking, insurance, brokerage and leasing services. As of August 24, 2022, U.S. Bancorp has nearly 70,000 employees in 13 countries, more than 2,000 branches in 26 U.S. states, and nearly $23 billion in annual revenue.

19.     U.S. Bancorp's banking subsidiary is U.S. Bank National Association ("U.S. Bank"). U.S. Bank provides a wide range of products and services to individuals, businesses, institutional organizations, governmental entities, and other financial institutions.

20.     U.S. Bancorp is the publicly traded parent company of U.S. Bank. and trades on the NYSE under the ticker "USB."

21.     Starting in at least 2015, according to the CFPB, U.S. Bank engaged in unlawful acts and practices when it imposed sales goals on bank employees as a factor in evaluating employee performance. U.S. Bank, and by extension U.S. Bancorp, implemented an incentive-compensation program that financially rewarded employees for selling consumer financial products or services. According to the 2022 Consent Order ("the Consent Order), U.S. Bancorp pressured employees to sell more products because doing so was in Defendant's best interest. In response to the pressure imposed on U.S. Bancorp employees, employees engaged in unlawful

conduct and opened deposit accounts, submitted applications for and issued credit cards, and opened lines of credit linked to deposit accounts without consumer's knowledge and consent.

22.　　On July 28, 2022, the investors learned of these practices when the CFPB: (i) issued a press release stating that "CFPB Fines U.S. Bank $37.5 Million for Illegally Exploiting Personal Data to Open Sham Accounts for Unsuspecting Customers;" and (ii) concomitantly issued a Consent Order fining U.S. Bank $37.5 million for this unlawful conduct and ordering the submission of a compliance plan that includes policies and procedures to identify, mitigate, and report risks and misconduct associated with sales-related behaviors.

**Materially False and Misleading Statements Issued During the Class Period**

23.　　The Class Period begins on August 1, 2019. On August 1, 2019, U.S. Bancorp filed its Form 10-Q with the SEC. In its "Corporate Risk Profile," U.S. Bancorp states:

> The Board of Directors, primarily through its Risk Management Committee, oversees performance relative to the risk management framework, risk appetite statements, and other policy requirements.
>
> The Executive Risk Committee ("ERC"), which is chaired by the Chief Risk Officer and includes the Chief Executive Officer and other members of the executive management team, oversees execution against the risk management framework and risk appetite statements. The ERC focuses on current and emerging risks, including strategic and reputational risks, by directing timely and comprehensive actions. Senior operating committees have also been established, each responsible for overseeing a specified category of risk. ***The Company's most prominent risk exposures are credit, interest rate, market, liquidity, operational, compliance, strategic, and reputational . . . Compliance risk is the risk that the Company may suffer legal or regulatory sanctions, material financial loss, or loss to reputation through failure to comply with laws, regulations, rules, standards of good practice, and codes of conduct.***
>
> ***The Company's Board and management-level governance committees are supported by a "three lines of defense" model for establishing effective checks and balances. The first line of defense, the business lines, manages risks in conformity with established limits and policy requirements. In turn, business line leaders and their risk officers establish programs to ensure conformity with these limits and policy requirements.*** The second line of defense, which

includes the Chief Risk Officer's organization as well as policy and oversight activities of corporate support functions, translates risk appetite and strategy into actionable risk limits and policies. The second line of defense monitors first line of defense conformity with limits and policies, and provides reporting and escalation of emerging risks and other concerns to senior management and the Risk Management Committee of the Board of Directors. The third line of defense, internal audit, is responsible for providing the Audit Committee of the Board of Directors and senior management with independent assessment and assurance regarding the effectiveness of the Company's governance, risk management and control processes.[1]

24.     Appended as exhibits to the August 1, 2019 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein Defendants Cecere and Dolan certified that the "(1) The Quarterly Report on Form 10-Q for the quarter ended June 30, 2019 (the "Form 10-Q") of the Company fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and (2) the information contained in the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company."

25.     On February 20, 2020, the Company released its annual 10-K report, which contained generic, boilerplate representations regarding the risks it faced as an entity subject to consumer protection and CFPB oversight, stating, in relevant parts:

Consumer Protection Regulation U.S. Bank National Association's retail banking activities are subject to a variety of statutes and regulations designed to protect consumers, including laws related to fair lending and the prohibition of unfair, deceptive, or abusive acts or practices in connection with the offer, sale, or provision of consumer financial products and services. These laws and regulations include the Truth-in-Lending, Truth-in-Savings, Home Mortgage Disclosure, Equal Credit Opportunity, Fair Credit Reporting, Fair Debt Collection Practices, Real Estate Settlement Procedures, Electronic Funds Transfer, Right to Financial Privacy and Servicemembers Civil Relief Acts. Interest and other charges collected or contracted for by banks are subject to state usury laws and federal laws concerning interest rates.

Consumer Financial Protection Bureau U.S. Bank National Association and its subsidiaries are subject to supervision and

---

[1] Unless otherwise stated, all emphasis is added.

regulation by the CFPB with respect to federal consumer laws, including many of the consumer protection laws and regulations described above. The CFPB has undertaken numerous rule-making and other initiatives, including issuing informal guidance and taking enforcement actions against certain financial institutions. The CFPB's rulemaking, examination and enforcement authority has affected and will continue to impact financial institutions involved in the provision of consumer financial products and services, including the Company, U.S. Bank National Association, and the Company's other subsidiaries. These regulatory activities may limit the types of financial services and products the Company may offer, which in turn may reduce the Company's revenues.

26. Plainly, these risk warnings were generic "catch-all" provisions that were not tailored to U.S. Bancorp's actual known risks with respect to its ongoing violations with respect to its consumer sales practices.

27. Appended as exhibits to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 wherein Defendants Cecere and Dolan certified that the "(1) The Annual Report on Form 10-K for the fiscal year ended December 31, 2019 (the "Form 10-Q") of the Company fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and (2) the information contained in the Form 10-K fairly presents, in all material respects, the financial condition and results of operations of the Company."

28. Additionally, in Exhibit 13 of U.S. Bancorp's 2020 10-K filing, the Company discusses its "Corporate Risk Profile" and states, in pertinent part:

> Management regularly provides reports to the Risk Management Committee of the Board of Directors. The Risk Management Committee discusses with management the Company's risk management performance, and ***provides a summary of key risks to the entire Board of Directors, covering the status of existing matters, areas of potential future concern*** and specific information on certain types of loss events. The Risk Management Committee considers quarterly reports by management assessing the Company's performance relative to the risk appetite statements and the associated risk limits, including. . .
>
> - Operational and Compliance risk, including losses stemming from events such as fraud, processing errors, control breaches, breaches

8

in data security or adverse business decisions, as well as reporting on technology performance, and various legal and regulatory compliance measures.

29.     This statement was materially false and misleading because U.S. Bancorp was not in fact monitoring certain of its consumer sales practices and the conduct of its employees. This exhibit concerning the Company's "Corporate Risk Profile" was also present in U.S. Bancorp's 2021 10-K and 2022 10-K statements.

30.     On May 4, 2021, U.S. Bancorp filed its Q1 10-Q Form with the SEC, which states, in pertinent part:

> Regulatory Matters
> The Company is continually subject to examinations, inquiries and investigations in areas of heightened regulatory scrutiny, such as compliance, risk management, third-party risk management and consumer protection. ***For example, the Consumer Financial Protection Bureau ("CFPB") is investigating certain of the Company's consumer sales practices, and the Company has responded and continues to respond to the CFPB.*** The Company is cooperating fully with all pending examinations, inquiries and investigations, any of which could lead to administrative or legal proceedings or settlements. Remedies in these proceedings or settlements may include fines, penalties, restitution or alterations in the Company's business practices (which may increase the Company's operating expenses and decrease its revenue).

31.     This statement is materially false and misleading because it insinuates U.S. Bancorp is complying with the CFPB and cooperating with the investigation when in reality, the Company continued to engage in unlawful conduct with respect to its consumer sales practices. This statement was also present in U.S. Bancorp's May 3, 2022 10-Q report.

32.     Appended as exhibits to the 2021 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 wherein Defendants Cecere and Dolan certified that the "(1) The Quarterly Report on Form 10-Q for the quarter ended March 31, 2021 (the "Form 10-Q") of the Company fully complies with the requirements of Section 13(a) or 15(d) of the Securities

Exchange Act of 1934; and (2) the information contained in the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company."

33.     On June 4, 2021, Defendant Cecere presented at Berstein's Strategic Decisions Conference. During the presentation, Defendant Cecere provided the following commentary:

> Unidentified Analyst: The first one is around the regulatory environment, what's your sense of how things might evolve on regulation? And which areas of interest in regulators these days are most relevant to U.S. Bank?
>
> Andy Cecere: So I do think as an industry, there's going to be continued focus, certainly on ESG. That's an area that we have a lot of focus on… **The other area, John is in consumer protection, and consumer activities. And, you know, maybe I'll just comment on overdrafts because I know that's a very topical subject. We've been very focused on this for a number of years**. Our overdraft fees have been coming down partly because we're sending notifications to customers to let them know about situations, that given their spent habits and inflow history, they may result in an overdraft situation, and set of actions they can take to avoid that.
>
> Unidentified Analyst: So Andy, to summarize, then you are giving customers more information and more choice and maybe a little bit more time to kind of choose how they want these things to be addressed and processed?
>
> Andy Cecere: Yeah. And that has been a focus for us for a while…

34.     The statements above were false and misleading because at the time Defendant Cecere made the statements, U.S. Bancorp gave the false impression it was focusing on consumer protection when in fact it was violating consumer protection laws and regulations for several years. The actions performed by U.S. Bancorp employees did not allot for more consumer choice, but rather inhibited consumers from making their own decisions as U.S. Bancorp employees were acting on consumers' behalf without their consent.

35.     On February 22, 2022, U.S. Bancorp filed its annual Form 10-K. In the "Supervision and Regulation" section, the Company states, in pertinent part:

"U.S. Bancorp and its subsidiaries are subject to the extensive regulatory framework applicable to bank holding companies ("BHCs") and their subsidiaries. This regulatory framework is intended primarily for the protection of depositors, the deposit insurance fund (the "DIF") of the Federal Deposit Insurance Corporation (the "FDIC"), consumers, the stability of the financial system in the United States, and the health of the national economy, and not for investors in the Company. . . Supervision and regulation by the responsible regulatory agencies generally include comprehensive annual reviews of all major aspects of the Company's and U.S. Bank National Association's business and condition, regular on-site examinations, and imposition of periodic reporting requirements and limitations on investments and certain types of activities."

36.     Appended as exhibits to the February 22, 2022 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein Defendants Cecere and Dolan certified that the "(1) The Annual Report on Form 10-K for the fiscal year ended December 31, 2021 (the "Form 10-K") of the Company fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and (2) the information contained in the Form 10-K fairly presents, in all material respects, the financial condition and results of operations of the Company."

**The Truth Begins to Emerge**

37.     On July 28, 2022, investors learned the truth about U.S. Bancorp's consumer sales practices when the Consumer Financial Protection Bureau issued the Order and identified the following unlawful acts and practices performed by U.S. Bank and/or its employees: (1) the application and issuance of credit cards and lines of credit without their knowledge and consent (2) the use or procurement of consumer reports of consumers who were not seeking an extension of credit from or involved in any form of credit transaction, account review or amount collection with the Company, where U.S. Bank had no other permissible purpose for the consumer reports it used or obtained; (3) the opening of consumer deposit accounts without consumers' knowledge and consent; and (4) creating sales pressure on its employees that led to employees opening credit cards, lines of credit, and deposit accounts without consumers' knowledge and consent. In sum,

the CFPB found that U.S. Bank violated: the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq., and its implementing regulation, Regulation Z, 12 C.F.R. part 1026; the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681b(f); and the Truth in Savings Act (TISA), 12 U.S.C. § 4301 et seq., and its implementing regulation, Regulation DD, 12 C.F.R. part 1030; and the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531 and 5536.

38.     The CFPB fined U.S. Bancorp $37.5 million and ordered the Company submit a compliance plan design to ensure the Company's relevant conduct complies with all applicable federal consumer financial laws and the terms of the Order.

39.     On this news, the price of U.S. Bancorp stock declined $2.00, or 4% and closed at $46.12 on July 28, 2022.

40.     As a result of Defendant's wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure, on its own behalf and as representative of a Class, consisting of all those who purchased or otherwise acquired U.S. Bancorp securities during the Class Period ("Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants, the officers, and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.     The Class is so numerous and geographically dispersed that joinder of all members is impracticable. Throughout the Class Period, U.S. Bancorp shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be

ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be readily identifiable from information and records in the possession of Defendants or the Company's transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and members of the Class sustained damages from the same wrongful conduct of Defendants. The injuries and damages of each member of the Class were directly caused by Defendants' wrongful conduct in violation of the laws described herein.

44.     The Plaintiff will fairly and adequately protect and represent the interests of members of the Class. Plaintiff is an adequate representative of the Class and has no interest which is adverse to the interests of absent Class members. Plaintiff has retained counsel competent and experienced in class action litigation, including class actions in the financial services industry.

45.     Common questions of law and fact exist as to all members of the Class, which predominate over questions affecting solely individual members of the Class. These common questions of law include, without limitation:

- whether statements made by U.S. Bancorp and the Individual Defendants to investors during the Class Period included misrepresentations of material facts about the severity and scope of the investigation by the CFPB into the Company's consumer sales practices;

- whether U.S. Bancorp and the Individual Defendants acted knowingly or recklessly in issuing false and misleading statements or omitting material information that would correct the misstatements;

- whether U.S. Bancorp's and the Individual Defendants' acts as alleged herein constituted violations of the federal securities laws;

- whether the prices of U.S. Bancorp shares during the Class Period were impacted by U.S. Bancorp's and the Individual Defendants' conduct described herein;

- injury suffered by Plaintiff and Class members; and

- the appropriate measure of damages suffered by Plaintiff and Class members.

46.     A class action is superior to other methods for the fair and efficient adjudication of the controversy because joinder of all Class members is impracticable. Treatment as a class will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.

47.     Class treatment will also permit the adjudication of claims by many Class members who could not afford individually to litigate claims such as those asserted in this Complaint. The cost to the court system of adjudication of such individualized litigation would be substantial. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct U.S. Bancorp and the Individual Defendants.

48.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### APPLICABILITY OF PRESUMPTION OF RELIANCE
### FRAUD ON THE MARKET DOCTRINE

49.     The market for U.S. Bancorp shares was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, U.S. Bancorp's shares traded at artificially inflated prices during the Class Period.

Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of U.S. Bancorp shares and market information relating to U.S. Bancorp and have been damaged thereby.

50.     During the Class Period, the artificial inflation of U.S. Bancorp's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about U.S. Bancorp's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of U.S. Bancorp's financials and its business, operations, and prospects, thus causing the price of U.S. Bancorp's shares to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the U.S. Bancorp shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing U.S. Bancorp shares at such artificially inflated prices, and each of them has been damaged as a result.

51.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine as:

- U.S. Bancorp and the Individual Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- these misrepresentations and omissions were material to Plaintiff and the Class;

- U.S. Bancorp's shares were traded on the NYSE and were covered by numerous analysts;

- U.S. Bancorp shares were liquid and traded with significant volume during the Class Period;

- the misrepresentations and omissions alleged herein would likely induce a reasonable investor to misjudge the value of the U.S. Bancorp shares; and

- Plaintiff and Class members purchased and/or sold U.S. Bancorp securities between the time U.S. Bancorp and the Individual Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

52.     As a result of the foregoing, the market for U.S. Bancorp shares promptly digested current information regarding U.S. Bancorp from all publicly available sources and reflected such information in U.S. Bancorp's share price. Under these circumstances, all purchasers of U.S. Bancorp's securities during the Class Period suffered similar injury through their purchase of U.S. Bancorp's shares at artificially inflated prices. Thus, a presumption of reliance applies.

53.     Accordingly, Plaintiff and Class members are entitled to a presumption of reliance upon the integrity of the market.

54.     In the alternative, Plaintiff and Class members are entitled to a presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 1456 (1972), because Defendants omitted material information during the Class Period violating a duty to disclose such information as described above. Because this action involves Defendants' failure to disclose material adverse information regarding the U.S. Bancorp's business operations and compliance risks—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

**LOSS CAUSATION**

55.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

56.     During the Class Period, Plaintiff and the Class purchased U.S. Bancorp's shares at artificially inflated prices and were damaged thereby. The price of U.S. Bancorp shares significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**NO SAFE HARBOR**

57.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to the allegedly false statements and omissions pled in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and circumstances. To the extent certain of the statements alleged to be false and misleading may be characterized as forward-looking, they were not adequately identified as "forward-looking" statements when made, and were not accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor is intended to apply to any forward-looking statements pled herein, U.S. Bancorp and the Individual Defendants are liable for those false and misleading forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false and misleading, and/or the forward-looking statement was authorized and/or approved by an executive officer of U.S. Bancorp who knew that those statements were false and misleading when made.

## SCIENTER ALLEGATIONS

58.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, U.S. Bancorp and Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding U.S. Bancorp, their control over, and/or receipt and/or modification of U.S. Bancorp's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning U.S. Bancorp, participated in the fraudulent scheme alleged herein.

59.     Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to the investing public. The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity or, at least, the reckless disregard of the personnel at the highest levels of the Company, including the Individual Defendants.

60.     The Individual Defendants, because of their positions with U.S. Bancorp, made and/or controlled the contents of the Company's public statements during the Class Period. Each Defendant was provided with or had access to the information alleged herein to be false and/or misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, these Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the

positive representations that were being made were materially false and misleading. As a result, each of these Defendants is responsible for the accuracy of U.S. Bancorp's corporate statements and are therefore responsible and liable for the representations contained therein.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder) Against All Defendants

61.     Plaintiff hereby incorporates each preceding and succeeding paragraph as though fully set forth herein.

62.     During the Class Period, U.S. Bancorp and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved false statements which they knew or deliberately disregarded in that they contained misrepresentations and failed to disclose material facts to make the statements made not misleading.

63.     U.S. Bancorp and the Individual Defendants violated § 10(b) of the 1934 Act and Rule 10b-5 by: (a) making false statements of material facts or omitted to state material facts needed to make the statements not misleading; or (b) engaging in acts and practices that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with purchases of U.S. Bancorp shares during the Class Period.

64.     U.S. Bancorp and the Individual Defendants acted with scienter because they knew that the statements issued in the name of U.S. Bancorp were materially false and misleading; knew that these statements would be disseminated to investors; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of these statements as primary violations of securities laws. U.S. Bancorp and the Individual Defendants, through receipt of information reflecting true facts about U.S. Bancorp, their control over, and/or receipt of or

modification to U.S. Bancorp's allegedly materially misleading statements, which made them aware of U.S. Bancorp's confidential proprietary information, participated in the fraudulent scheme complained of herein.

65.     The Individual Defendants had actual knowledge of material omissions and/or the falseness of material statements set forth by U.S. Bancorp, and intended to deceive Plaintiff and Class members, or at a minimum, recklessly disregarded the truth through their failure to ascertain and disclose the truth in statements made by them or other U.S. Bancorp employees to investors, including Plaintiff and Class members. These misrepresentations and omissions were material. A reasonable investor would consider the facts—such as the severity of investigation by the CFPB into certain of U.S. Bancorp's consumer sales practices —important in deciding whether to buy shares of U.S. Bancorp stock and would have viewed the aggregate of information available to be significantly altered by the disclosure of this and other material facts.

66.     Pursuant to the foregoing, the price of U.S. Bancorp shares was artificially inflated during the Class Period. Due to their lack of knowledge of the false nature of statements made by U.S. Bancorp and the Individual Defendants, Plaintiff and Class members relied on the statements made by U.S. Bancorp and the Individual Defendants and/or the integrity of the market price of U.S. Bancorp shares during the Class Period in purchasing U.S. Bancorp securities at prices that were artificially inflated due to false and misleading statements made by U.S. Bancorp and the Individual Defendants.

67.     Were Plaintiff and Class members made aware that the market price of U.S. Bancorp shares was artificially and falsely inflated by misleading statements made by U.S. Bancorp and the Individual Defendants, and by material adverse information that U.S. Bancorp and the Individual Defendants failed to disclose, they would not have purchased U.S. Bancorp securities at artificially inflated prices, or purchased them at any price.

68.     Based on the wrongful conducts alleged herein, Plaintiff and Class members have suffered damages in an amount to be determined at trial.

69.     U.S. Bancorp and the Individual Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiff and Class members for significant damages suffered via their purchases of U.S. Bancorp shares during the Class Period.

**SECOND CLAIM FOR RELIEF**

**(Violation of Section 20(a) of the Exchange Act)**
**Against the Individual Defendants**

70.     Plaintiff hereby incorporates each preceding and succeeding paragraph as though fully set forth herein.

71.     During the Class Period, the Individual Defendants were involved in the management and operation of U.S. Bancorp's consumer sales practices. Due to their senior positions, they had knowledge of adverse non-public information regarding U.S. Bancorp's business model, strategy, valuation, and revenue targets and goals and false representations in connection therewith.

72.     As directors and/or officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information regarding U.S. Bancorp's financial condition and results of operations, and to correct any public statements issued by U.S. Bancorp which were materially false or misleading.

73.     Due to their positions of authority at U.S. Bancorp, the Individual Defendants controlled the contents of various public filings, press releases and reports which U.S. Bancorp disseminated in the market during the Class Period. During the Class Period, the Individual Defendants utilized their authority to cause U.S. Bancorp to execute the wrongful acts alleged herein. The Individual Defendants were therefore "controlling persons" at U.S. Bancorp pursuant

to Section 20(a) of the Exchange Act. On this basis, they were participants in the unlawful conduct alleged which caused the prices of U.S. Bancorp shares to be artificially inflated.

74.     Based on the conduct described above, the Individual Defendants are liable for the violations committed by U.S. Bancorp pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands relief as follows:

A.     Certifying this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as Class Representative;

B.     Awarding damages in favor of Plaintiff and members of the Class against U.S. Bancorp and the Individual Defendants, jointly and severally, for all damages sustained as a result of U.S. Bancorp's wrongdoing, in an amount to be proven at trial;

C.     Awarding Plaintiff and members of the Class their costs of suit, including reasonable attorneys' fees and expenses, and including expert fees, as provided by law;

D.     Awarding Plaintiff and members of the Class pre- and post-judgment interest at the maximum rate allowable by law; and

E.     Directing such further relief as it may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated:   October 26, 2022

<div style="margin-left: 40%;">

**LOWEY DANNENBERG, P.C.**

/s/ *Alesandra Greco*
Andrea Farah
Alesandra Greco
44 South Broadway, Suite 1100
White Plains, New York 10601
Telephone: 914-997-0500
Email: afarah@lowey.com
Email: agreco@lowey.com

**THE SCHALL LAW FIRM**
Brian Schall, Esq.
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Direct: (424) 303-1964
Fax: (213) 519-5876
Email: brian@schallfirm.com

*Counsel for Plaintiff*

</div>